UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

UNITED STATES OF AMERICA    :
    :
    v.           :    No. 5:23-cr-00169
    :
DIEGO CASTILLO-PEDRAZA    :

---

**O P I N I O N**
**Government's Motion in Limine to Admit 404(b) Evidence, ECF No. 19 – Granted**
**Defendant's Motion to Deny Government's 404(b) Motion, ECF No. 25 – Denied**

**Joseph F. Leeson, Jr.**           **August 26, 2024**
**United States District Judge**

## I.  INTRODUCTION

This case involves a drug possessory offense.  The Government filed a Motion in Limine because it seeks to admit the testimony of two cooperating witnesses, referred to as CW-1 and CW-2, in order to establish that Castillo-Pedraza used a particular residence to receive and store drugs.  Defendant Diego Castillo-Pedraza opposes the use of this witness testimony, arguing that the evidence of his prior acts should be excluded under Federal Rule of Evidence 404(b) as impermissible character evidence.  For the forgoing reasons, the Court will grant the Government's motion and deny Castillo-Pedraza's motion.

## II.  BACKGROUND

*The Instant Offense*

The Government alleges the following.  In or around March of 2021, federal agents seized approximately 2 pounds (1039 grams) of methamphetamine at a house in Reading, Pennsylvania (the "House").  Gov't Mot., ECF No. 19; Indict., ECF No. 1. The House was

owned by CW-1.  Gov't Mot. 2.  The drugs were secured in a safe.  *Id.*  At that time, Castillo-Pedraza did not own or live in the House, nor was he present when the drugs were seized.  *See id*.  However, a fingerprint analysis revealed one of Castillo-Pedraza's prints on the exterior of the drug packaging.  *Id*.  Consequently, on April 19, 2023, a grand jury charged Castillo-Pedraza with one count of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), b(1)(A), and aiding and abetting, in violation of 18 U.S.C. § 2.  Indict.

*The Government's Investigation*

1.  *July 2019 Seizure and Witness Involvement*

On or around July 12, 2019, federal agents seized a postal service package containing 5.5 pounds of methamphetamine, which was addressed for delivery at a house in Reading, Pennsylvania (the "House").  Gov't Mot. at 4.  According to surveillance, CW-2 had travelled from his home to the House by car with an unidentified woman.  *Id*. The woman exited CW-2's car and appeared to look for something in front of the house before returning to the car and driving with CW-2 back to his home.  *Id*.  FBI agents intercepted a call of CW-2's that same evening,[1] and believed CW-2 was discussing the package of methamphetamine.  *Id*. at 5.

CW-2 was arrested on September 5, 2019, and ultimately pled guilty to distributing 50 grams or more of methamphetamine after reaching a cooperation agreement with the Government.  *Id*. at 6.  At a proffer session on September 17, 2019, CW-2 admitted that he was expecting a delivery of methamphetamine at the House, which was owned by CW-1.  *Id*.  He also told the Government that Castillo-Pedraza, his friend and extended family member, directed

---

[1]      On June 20, 2019, Judge Anita B. Brody of this District authorized the wiretap of three cellphones, including one being used by CW-2.  Gov't Mot. at 3-4.

the package to be delivered to the House and addressed to CW-1. *Id*. Apparently, the plan for

the intercepted package was for CW-2 and Castillo-Pedraza to divide and sell the

methamphetamine. *Id*. CW-2 also told the Government that Castillo-Pedraza regularly sold

drugs to CW-1 and another person living at the House. *Id*.

    2. *March 2021 Seizure and Witness Involvement*

    In early 2021, a confidential informant purchased methamphetamine from CW-1 at the

House on multiple occasions. *Id*. at 7. Consequently, Berks County detectives applied for a

search warrant of the House, and on March 19, 2021, CW-1 was detained. *Id*. Among other

things, the police recovered two pounds of methamphetamine (the same methamphetamine at

issue in this case) from inside a safe, as well as scales, cash, and firearms at the House. *See id*.

At that time, CW-1 admitted to keeping "a lot of stuff" in his bedroom safe, as well as to holding

"meth" that belonged to someone else, though he did not specify whom. *Id*. Thereafter, CW-1

was charged with various drug trafficking crimes by the state. *Id*. at 8.

    In July of 2022, CW-1 proffered with the Government. *Id*. CW-1 told the Government

that, before the search warrant was executed on the House, Castillo-Pedraza had stored several

pounds of methamphetamine in CW-1's safe, and Castillo-Pedraza would visit the House often

to retrieve the drugs. *Id*. In exchange, CW-1 would buy ounces of the drugs from Castillo-

Pedraza at a discount. *Id*. CW-1 also told the Government that, while he was released on bail,

Castillo-Pedraza visited him twice, asking for money for the methamphetamine that was seized

by police in March of 2021. *Id*. Ultimately, the Government adopted the local Berks County

case and, after reaching a cooperation agreement with the Government, CW-1 pled guilty to two

counts in sealed information for attempting to possess the 5.5 pounds of methamphetamine

shipped to the House in July 2019 and for possessing the two pounds of methamphetamine seized from the House in March 2021.  *Id.*

*Testimony Sought to be Admitted*

As previously mentioned, the Government seeks to admit the testimony of two cooperating witnesses, referred to as CW-1 and CW-2, in order to establish that Castillo-Pedraza used the House to receive and store drugs before their planned distribution.  *See* Gov't Mot.  The Government does not seek to admit all of the evidence revealed by its investigation, as laid out above.  Rather, the Government seeks to introduce the testimony from CW-1 and CW-2 limited to (1) the witnesses' individual relationships with Castillo-Pedraza, including the sometimes-unlawful nature of their acquaintance, (2) Castillo-Pedraza's connection to the House, and, more specifically, (3) Castillo-Pedraza's involvement and/or connection to the July 2019 and March 2021 drug seizures.  *See id.* at 9-10.

### III.    LEGAL STANDARDS

### A.  Character Evidence under Rule 404(b) – Review of Applicable Law

Federal Rule of Evidence 404(b) "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." *Huddleston v. United States*, 485 U.S. 681, 685 (1988).  *See also* Fed. R. Ev. 404(b)(2) (Evidence of a crime, wrong, or other act may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").  "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Id.*

"Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). "To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). "A proper purpose is one that is 'probative of a material issue other than character.'" *Id*. at 250 (quoting *Huddleston*, 485 U.S. at 686). "[T]he party seeking to admit evidence under Rule 404(b)[ ] bears the burden of demonstrating its applicability [and] identifying a proper purpose." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (holding that the court must determine whether the government has offered a non-propensity purpose "that is 'at issue' in, or relevant to, the prosecution"). "If the government offers prior offense evidence, it must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses before, he therefore is more likely to have committed this one." *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992).

However, Rule 404(b) "does not apply to uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense." *United States v. Gibbs*, 190 F. 3d 188, 217 (3d Cir. 1999). In the Third Circuit, there are two types of intrinsic evidence. *See Green*, 617 F. 3d 233, 248. "First, evidence is intrinsic if it directly proves the charged offense." *Id.* (internal quotations and citation omitted). Second, evidence of uncharged acts is intrinsic if they were "performed contemporaneously with the charged crime" and "if they facilitate the commission of the charged crime." *See id.* (internal quotations and citation omitted). Thus,

intrinsic evidence is admissible without conducting a 404(b) analysis so long as it is not inadmissible under another rule.

**B. Prejudicial Evidence under Rule 403 – Review of Applicable Law**

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Fed. R. Ev. 403.  This rule "creates a presumption of admissibility." *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002).  "Rule 403 mandates a balancing test, 'requiring sensitivity on the part of the trial court to the subtleties of the particular situation.'" *United States v. Cunningham*, 694 F.3d 372, 391 (3d Cir. 2012) (quoting *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010)). It is not enough that the evidence be prejudicial because "[v]irtually all evidence is prejudicial or it isn't material." *United States v. Maurizio*, No. 3:14-23, 2015 U.S. Dist. LEXIS 118516, at *25 (W.D. Pa. Sep. 4, 2015) (internal quotations omitted).  Rather, the probative value of the evidence must be "*substantially* outweighed" by the danger of "unfair prejudice." *See* Fed. R. Ev. 403 (emphasis added); *Cross*, 308 F.3d at 323 (holding that "when evidence is highly probative, even a large risk of unfair prejudice may be tolerable").

**IV.   DISCUSSION**

The Government argues that the testimony of its two cooperating witnesses[2] should be admitted because (1) the evidence is intrinsic to the charged offense, (2) the evidence is

---

[2]      It is not clear whether the Government also seeks to admit the recorded conversation of CW-2 from 2019 as it is not included as evidence in the section titled "Evidence Sought to be Admitted at Trial," *see* Mot. 9-11, but is mentioned elsewhere in the motion, *see id.* 13. Regardless, there appears to be another hurdle to admission of the intercepted calls as it is unlikely that they will satisfy the rule against hearsay.  Moreover, the recorded calls appear to be duplicative of CW-2's testimony and offered solely to bolster the witness's credibility. Accordingly, to the extent the Government wants to play any of the recorded conversations, it must first seek a side-bar ruling on the admissibility of this evidence, at which time a full evaluation regarding the admissibility under the Federal Rules of Evidence will be made.

admissible under Rule 404(b) as evidence of Castillo-Pedraza's plan, knowledge, and intent, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.  Gov't Mot. at 11, 13, 20.  Castillo-Pedraza argues that the evidence should not be admitted because it (1) is not relevant, (2) does not serve a non-propensity purpose, and (3) creates a danger of unfair prejudice.  Def. Mot. at 7-8 (adopting the pagination assigned by the Electronic Filing System).  As discussed below, the Court finds that the evidence is admissible under Rule 404(b), as it is probative of a material issue other than character.  This probative value is not substantially outweighed by the danger of unfair prejudice, and any potential prejudice may be addressed through the appropriate limiting jury instruction.

### A.    The Government's Motion in Limine to Admit 404(b) Evidence

Initially, this Court agrees with the Government that much of this evidence is intrinsic in nature.  Specifically, CW-1, who owned the House where the drugs at issue were seized, will testify, *inter alia*, that the drugs seized from the safe belonged to Castillo-Pedraza and were placed in the safe by Castillo-Pedraza.  *Id*.  This testimony is admissible without reliance on Rule 404(b).  Similarly, testimony of both CW-1 and CW-2 connecting Castillo-Pedraza to (1) the House where the drugs were seized, (2) the owner of the House, and (3) the drugs themselves is intrinsic and admissible without regard to Rule 404(b).

Moreover, to the extent that the testimony of CW-1 and CW-2 is extrinsic to the offense, largely because it discusses prior drug trafficking activity and Castillo-Pedraza's use of the House in 2019 to store drugs, the Court finds that the evidence is admissible under Rule 404(b) for the following reasons.

First, the evidence has a proper evidentiary purpose.  The Government does not seek to admit evidence of completely unrelated offenses, or merely prior drug-related crimes of Castillo-

Pedraza.  This evidence would show Castillo-Pedraza's plan, knowledge, and intent to commit the charged offense, which are all proper purposes under Rule 404(b).  As alleged, the witnesses testimony will show that Castillo-Pedraza knew both of them, knew and intended for the methamphetamine to be stored at the House, and planned to retrieve the methamphetamine in order to sell or distribute it at a later date.  Moreover, and as also discussed below, the witnesses' testimony will provide necessary background information to create a full story of the charged crime, one that explains Castillo-Pedraza's connection to the House and to the witnesses and also explains why he stored methamphetamine in CW-1's safe in March 2021, which is also a proper purpose.  *See United States v. Green*, 617 F.3d 233, 247 (3d Cir. 2010) ("[A]llowing the jury to understand the circumstances surrounding the charged crime–completing the story–is a proper, non-propensity purpose under Rule 404(b)." (citations omitted)).  Although CW-2's testimony pertains to an uncharged crime from 2019, the evidence is proper because it relates to Castillo-Pedraza's familiarity with CW-1, the House, and the criminal manner in which they worked together.  *See United States v. Mathis*, 264 F.3d 321, 329 (3d Cir. 2001) (affirming the district court's admission of testimony about the defendant's previous uncharged crimes because, not only did the testimony establish the defendant's previous associations, but it "provided significant background information bolstering the charged conspiracy's plausibility").

Second, the testimony of the cooperating witnesses is relevant to the offense charged. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Ev. 401. Relevancy is not a difficult standard to meet, as the "definition is very broad."  *See Green*, 617 F.3d at 251 (internal quotations omitted).  Here, whether Castillo-Pedraza had pre-existing relationships, arrangements, and/or illicit drug-dealings with the cooperating witnesses at the

House is of consequence and tends to make it more or less probable that Castillo-Pedraza stored the methamphetamine at the House with CW-1's consent and with the plan to distribute or sell the drugs.  Without the witness testimony, all the jury will know is that the methamphetamine was seized at the House with Castillo-Pedraza's fingerprint on the packaging, without knowing his connection to the House.  Therefore, establishing the relationship between Castillo-Pedraza and the cooperating witnesses will also help the jury contextually understand each person's role in the scheme and draw a complete story.  *See United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982), *cert. denied*, 462 U.S. 1134 (1983) (holding that, under 404(b), "the testimony of . . . a co-conspirator and the key prosecution witness[] could be considered as relevant to provide necessary background information, to show an ongoing relationship between [the witness and the defendant], and to help the jury understand [the witness's] role in the scheme" (citation omitted)).  *See also United States v. Butch*, 256 F.3d 171, 176 (3d Cir. 2001) (affirming the district court's decision to admit witness testimony which "was 'logically relevant to explain [the witness's] role in the criminal enterprise' and because it 'would give the jury a complete story of the crime by explaining the circumstances of the alleged relationship" between the witness and the defendant).

Third, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.  The evidence is significantly probative here, because as previously mentioned, without the testimony connecting Castillo-Pedraza to the House or establishing his relationship with CW-1, the only direct evidence the jury will have is Castillo-Pedraza's fingerprint on the drug packaging.  Although some risk of prejudice remains, as the incidents that will be testified to are quite similar, such risk is not enough to substantially outweigh the probative value of the evidence, which is the only evidence available that draws a complete story

of the charged offense for the jury.  *See Cross*, 308 F.3d at 323 (holding that "when evidence is highly probative, even a large risk of unfair prejudice may be tolerable").  However, to minimize the risk of unfair prejudice, the Court will also issue a limiting instruction to the jury.

**B.** **Defendant's Motion in Limine to Deny the Government's 404(b) Motion**

For the same reasons, Castillo-Pedraza's motion in limine requesting the Court to deny the Government's motion, or in other words to exclude the cooperating witnesses' testimony, is denied.

**V.** **CONCLUSION**

In conclusion, the Government's motion is granted, and Defendant's motion is denied.  A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

_____